UNITED STATES, to Use of ROWLAND, v. GUERBER et al.

(Circuit Court, S. D. New York. June 9, 1903.)

1. CONTRACTS—PERFORMANCE—EXTENSIONS OF TIME—CONSENT—FINDINGS.

Plaintiff and defendant agreed jointly to perform certain work in the construction of a lighthouse for the United States and share profits and losses. Plaintiff was to contribute everything pertaining to the ironwork, and defendant agreed to furnish the concreting, masonry, carpentering, and painting. When the caisson was nearly in place it was destroyed by a derelict hurled against it by the waves, after which the lighthouse was constructed on another site. An extension of time to complete the contract was obtained, to which plaintiff consented and, after a second extension had been obtained by defendant, plaintiff continued his work with knowledge thereof. *Held*, that such facts warranted a finding that plaintiff also consented to the second extension.

2. SAME—PARTNERS.

Where plaintiff and defendant agreed to enter into a contract with the United States for the construction of a lighthouse, defendant agreeing to furnish the ironwork and plaintiff the concreting, masonry, carpentering, and painting, and it was agreed that if there was a profit over and above the cost defendant, in whose name the contract was taken, should pay plaintiff one-half of such profits, and if there was a loss plaintiff should be chargeable with one-half thereof, plaintiff and defendant were partners in the undertaking.

3. SAME—AGREEMENT—CONSTRUCTION—ACT OF GOD.

Where a contract between plaintiff and defendant for the construction of a lighthouse for the United States provided that they should share the profits and losses equally, and declared that each party should contribute particular parts of the work, a provision that each party should be responsible for any accident or damage resulting from his operation or neglect applied only to losses accruing to third parties, and did not include a loss of the entire work by an act of God.

Howard A. Sperry, for plaintiff.
John Brooks Leavitt and Nadal, Smyth & Carrere, for defendants.

PLATT, District Judge. This action is brought upon a bond executed by Guerber as principal, and Fidelity & Casualty Company of New York as surety, pursuant to chapter 280, Act Aug. 13, 1894, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], to recover for labor and materials furnished under a contract between Guerber and the United States, and, by stipulation, a trial by jury has been waived and the cause submitted to the court.

Upon the hearing the court finds the following facts: Shortly prior to September 13, 1898, Guerber suggested to Rowland that they go in for the contract together to build a lighthouse for the United States government, and to this Rowland assented. They worked over the figures during several weeks to determine what their bid should be. Having completed their figures, the bid, by agreement between them, was put in by Guerber. They agreed that Guerber was to contribute everything pertaining to the ironwork, and Rowland the concreting, masonry, carpentering work, and painting, and that if the contract was awarded they would share the profits or losses equally. The contract

¶ 2. See Partnership, vol. 38, Cent. Dig. § 27.

was awarded September 13, 1898. Guerber and Rowland then went to the Fidelity & Casualty Company to apply for a bond, and the bond was executed by Guerber as principal and the Fidelity & Casualty Company as surety on the same day. On the same date Guerber and Rowland, as parties of the first part, and the Fidelity and Casualty Company, as parties of the second part, executed an agreement, which recites:

"Whereas, at the request of the said parties of the first part, and in consideration of this agreement and of the security hereof, the company has executed, or is about to execute, as surety, a certain bond or application in the sum of $6,000, to the United States of America," etc.

Then follows a description of the bond. Then follows an agreement that they (Guerber and Rowland) shall pay the company the sum of $60 per annum for the bond, and shall indemnify and save harmless the company against all loss, damages, costs, etc., which "it may at any time sustain, incur, or be put to" by reason of said bond. On September 27, 1898, Guerber and Rowland entered into an agreement in writing, which practically coincided with their earlier verbal arrangement, and a copy thereof stipulated to be correct can be found in the pleadings. They went to work upon the lighthouse, and after part of the work had been done it was destroyed by a derelict, which was hurled against the caisson. The stipulated facts touching upon that point are as follows:

"The reason for the excess of expenditure over the estimates, on the basis of which the contract to erect the lighthouse in question was taken, was that on October 25, 1898, when the caisson was nearly in place, a storm came up and drove the men away from the work; and on the evening of the next day, the storm continuing meantime, a derelict was hurled by the waves against the caisson, destroyed it, and the work had to be done all over again. By the consent of the government the time for the completion of the lighthouse was extended, and its site changed to a more available spot near by. At the time of such destruction none of the concrete work had been begun, and the carpenter work, hardware, and painting could not be done or utilized until after the concrete work was begun."

The government gave two extensions of the date for finishing the contract—one of two months and another of fifteen days. The first extension was beyond question obtained with the knowledge and consent of both Rowland and Guerber. As to the second extension, it is clear to my mind from all the evidence, and I so find, that it was also obtained with the knowledge and consent of both Rowland and Guerber.

At the completion of the contract there was a loss, due to the destruction of the caisson by the derelict, which has been referred to above. A settlement was made upon the basis of each party's losing one-half. The plaintiff now claims that the defendant should bear the entire loss occasioned by the derelict. If his contention prevails, it is stipulated that the loss is $1,653.12, with lawful interest.

The evidence does not support the contention of the plaintiff that an accident causing damage resulted from Guerber's operation, and I find, as fact, that it did not. Neither was Guerber negligent in selecting the time and manner of placing the caisson. An accident occurred,

and damage·resulted, but the operation of Guerber in no sense contributed thereto.

The foregoing finding of facts practically eliminates any extended discussion of the law applying thereto, and what I shall say is, to some extent, a rather rough statement of my reasons for some of my findings.

1. Was the contract of indemnity which Rowland and Guerber made with the Fidelity Company abrogated, so far as Rowland is concerned, by the second extension of time granted by the government for the completion of the work? I have found as a fact that Rowland consented to that extension. He practically accepted the extension of time by going on and completing his work on the caisson during the extension. He knew of the extension, because he knew when the first extension expired, and Guerber discussed with him the second extension. From the outset he had gone into the entire matter jointly with Guerber. The accident occurred during the joint undertaking. It was for their joint benefit to have the time extended, and it is a very strained and contracted view of the situation for Rowland, at the end, to try to take advantage of the fact that he did not in so many words inform the Fidelity Company that he consented to the second extension. He admits that he consented to the first extension. What possible reason can exist which will explain his unwillingness to consent to a second extension without which the loss would have been very much larger than it actually was? In discussing this point I am looking at the matter from the standpoint that Rowland and Guerber were not partners in a joint undertaking. If they were partners, of course the consent of Guerber must be accepted as the consent of Rowland. In truth, if they were partners, and I think that without question they were, then there is nothing left of the case. From neither view of the matter, however, can I find any substantial footing for the plaintiff. He would have been no worse off if he had been standing on the caisson during its interview with the derelict.

2. Assuming that the relation of contractor and subcontractor existed between Guerber and Rowland, what meaning must be attached to the clause in their contract of September 27, 1898: "Each party shall be responsible for any accident or damage resulting from his operation or neglect." This is the contract under which must be measured the value of the labor and materials which Rowland furnished, and to arrive at that the last paragraph must be taken into account:

"Should there appear a profit over and above the cost, then Louis A. Guerber shall pay to John T. Rowland the balance of the amount proved to have been legitimately expended by John T. Rowland and one-half (½) of the profits. Should there appear a loss, then Louis A. Guerber shall pay to John T. Rowland the balance of the amount proved to have been legitimately expended by John T. Rowland, less one-half (½) of the loss."

Under Guerber's contract with the government Rowland has confessedly been paid in full, unless his rights are saved by the first clause quoted. The clause cannot mean that in arriving at the profit or loss under the government contract each party shall bear exclusively, as between themselves, the losses which arise from his operation or

neglect as affecting his individual work. It seems clear that it means that each should bear any loss which he should be compelled to pay to third parties.

The situation forces that meaning into the words. One understood the sinking of the caisson and the ironwork generally. The other was conversant with concreting, mason work, etc. When the caisson has been located, the mason work would follow. They were distinct undertakings, requiring different management, different experience, and different employés. Neither understood the other's work. It was for that reason that they pooled their issues in figuring on the contract. Each respected the other's capacity and competency in his own line of work. They were willing to speculate together, on the strictly business end of the proposition; but when it came to what each might have to pay by way of damage, either to his own employés or to outsiders, each was the best judge of that element of expense, and each was content to bear alone his own risk. It is exceptionally unfair to endeavor to read into that simple clause such a meaning as the plaintiff in the light of the developed facts, which were not at the time even suspected, much less contemplated, now contends for with abundant strenuosity. If the plaintiff were permitted to occupy every position essential to his safety until this one is reached, he would find here an impassable barrier. But, if we take the broadest possible construction of the clause, the accident was in no sense due to the operation or neglect of Guerber. He was guilty of no negligence in sinking the caisson when he did sink it. I have heretofore found this fact. Under the stipulated facts the destruction of the caisson was as surely due to an "Act of God" as if a thunderbolt from the skies had been hurled by an Omnipotent Power against the luckless endeavor.

The logical conclusion is that judgment should be entered for the defendants to recover their costs. It is so ordered.